IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH J. DICK, JR.,

    Petitioner,

v.                                        Civil Action No. 3:10CV505

WILLIAM M. MUSE,

    Respondent.

## MEMORANDUM OPINION

Joseph J. Dick, Jr., a Virginia probationer, submitted this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Dick challenges his convictions, following a guilty plea, for first degree murder and rape. Respondent has moved to dismiss on the grounds that, *inter alia*, the statute of limitations applicable to federal habeas petitions bars Dick's petition and that Dick's claims are procedurally defaulted. Dick has responded. For the reasons set forth below, the Court will set the matter for an evidentiary hearing on Dick's assertion that his actual innocence allows the Court to address the merits of his claims. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) ("Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations.")

### I. Dick's Grounds for Habeas Relief

Because the nature of a petitioner's claims bears on what evidence the Court may consider as part of the actual innocence inquiry, it is appropriate to recite Dick's grounds for habeas relief prior to addressing his assertion of actual innocence. *See Cleveland v. Bradshaw*, 693 F.3d 626, 637 n.4 (6th Cir. 2012) (quoting *Gomez v. Jaimet*, 350 F.3d 673, 680 (7th Cir. 2003)). Dick demands relief upon the following grounds:

Claim 1     Dick is actually innocent of the murder and rape of Michelle Bosko.

Claim 2     Dick failed to receive the effective assistance of counsel for the following reasons:[1]

> (a) Counsel failed to investigate Dick's assertions that he was on the USS *Saipan* on the night of Michelle Bosko's rape and murder. Had counsel conducted an adequate investigation, he would have discovered that Dick's immediate supervisor at the time of the murder, Senior Chief Michael Ziegler, could confirm that Dick was on the USS *Saipan* on the night of the rape and murder.
> (b) Counsel failed to adequately investigate the crime scene or consult with a forensic pathologist. Had counsel conducted such investigations he would have discovered that the crime scene and the autopsy overwhelmingly supported the conclusion that only a single individual had raped and murdered Michelle Bosko.
> (c) Counsel failed to consult with an expert with respect to interrogations. Had counsel consulted with an expert in interrogations, counsel would have learned that Dick's confession was totally unreliable.
> (d) Counsel "ignored red flags raised during a pre-trial mental health assessment that Joe's confession was false." (§ 2254 Pet. ¶ 157.)
> (e) "During pretrial events, trial counsel ignored still more red flags suggesting that Joe's confession was false." (*Id.* ¶ 158.)

Claim 3     Dick's guilty plea was involuntary for a variety of reasons, including:

> (a) As detailed above, Dick failed to receive the effective assistance of counsel.
> (b) Additionally, trial counsel contributed to convincing Dick that Dick was guilty.
> (c) The Commonwealth suppressed the following exculpatory evidence:
> > (i) information that indicated "Omar Ballard should be a suspect," (*id.* ¶ 166.i);
> > (ii) information "that one of Dick's co-defendants - John Danser -- had a very solid alibi and could not have participated in the crime," (*id.* ¶166.ii); and,
> > (iii) "Derek Tice told police in the fall of 1998 that he was not involved in the crime." (*Id.* ¶ 166.iii.)

Claim 4     "Repeated overreaching, purposeful manipulation of the criminal justice process and deliberate misconduct committed by the former Det. Ford ... deprived Mr. Dick of a fundamentally fair trial court adjudication in violation of the Fourteenth Amendment of the United States Constitution." (*Id.* ¶ 168.)

---

[1] "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

## II. Standard for Actual Innocence

"Claims of actual innocence, whether presented as freestanding ones, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), or merely as gateways to excuse a procedural default, *see Schlup v. Delo*, 513 U.S. 298, 317 (1995), should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (parallel citations omitted). Here, the Court reviews Dick's assertion of innocence under the more lenient standard for gateway claims because Dick's actual innocence claim would allow the Court to consider his otherwise time-barred or procedurally defaulted constitutional claims. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013).[2]

### A. New Evidence Requirement

A gateway claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* "Some circuits require the petitioner to present 'newly discovered' evidence as opposed to evidence that is merely 'newly presented.'" *Lee v. Johnson*, No. 2:10cv122, 2010 WL 3937334, at *5 n.9 (E.D. Va. July 28, 2010).[3] Under either definition, as pertinent here, the Court evaluates whether the evidence

---

[2] The United States Court of Appeals for the Fourth Circuit has indicated that the limitations on conducting evidentiary hearings set forth in 28 U.S.C. § 2254(e)(2) do not apply to hearings on a petitioner's assertion of actual innocence as a gateway to evaluate otherwise barred claims. *See Teleguz v. Pearson*, 689 F.3d 322, 331 n.6 (4th Cir. 2012) (citations omitted).

[3] The distinction between "newly discovered" and "newly presented" evidence has heightened significance when little to no evidence was presented initially during the criminal proceedings because the defendant entered a guilty plea due to the allegedly deficient advice of counsel.

> In those circuits where the evidence must be newly discovered, "[a] defendant's own late-proffered testimony is not 'new' because it was available at trial [and the defendant] merely chose not to present it to the jury." *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004); *see also Osborne v. Purkett*, 411 F.3d 911, 920 (8th

3

is "new" relative to the time he entered his guilty plea. *See Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999).

### B. Evaluate All of the Evidence

If a petitioner meets the burden of producing new, truly reliable evidence of his innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)).

---

Cir. 2005). Other circuits require only that the evidence be newly presented, noting that "[p]articularly in a case where the underlying constitutional violation claimed is the ineffective assistance of counsel premised on a failure to present evidence, a requirement that new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway." *Gomez v. Jaimet*, 350 F.3d 673, 679–80 (7th Cir. 2003); *see also Prince v. Thaler*, 354 F. App'x 846, 847 (5th Cir. 2009); *Griffin v. Johnson*, 250 F.3d 956, 963 (9th Cir. 2003).

*Lee*, 2010 WL 3937334, at *5 n.9 (alterations in original). At this juncture in these proceedings, the Court will consider all evidence that is newly presented. *See Royal v. Taylor*, 188 F.3d 239, 244 (4th Cir. 1999) ("The *Schlup* Court adopted a broad definition of 'new' evidence to be considered in such cases: a petitioner must offer 'new reliable evidence ... that was not presented at trial.'" (quoting *Schlup*, 513 U.S. at 324) (omission in original)). The parties remain free to submit further briefing on this issue.

## III. Analysis

By Memorandum Opinion and Order entered on June 27, 2014, the Court provided a lengthy discussion of the facts and circumstances relevant to the conviction of Danial Williams, Dick's codefendant in the rape and murder of Michelle Bosko. *See Williams v. Muse*, No. 3:09CV769, 2014 WL 2921932, at *7–10 (E.D. Va. June 27, 2014).[4] The Court concluded that Williams had provided sufficient new reliable evidence of his innocence to warrant an evidentiary hearing as to his gateway claim of innocence. *Id.* at *10–14. As explained below, although his case is less compelling than Williams's, Dick has provided sufficient new reliable evidence of his innocence to warrant an evidentiary hearing on his claim of innocence.

As detailed in the Court's prior opinion, the following new evidence refutes the notion that Williams and Dick raped and murdered Michelle Bosko:

---

[4] The Court supplements that discussion with the following facts pertinent to Dick. During Dick's plea hearing, the prosecution provided the following summary of its evidence had the case gone to trial:

> Michelle Bos[ko] was found dead in her apartment located at 254 West Bay Avenue in the City of Norfolk by her husband who had just returned from sea duty. An autopsy revealed she died as a result of manual strangulation and multiple stab wounds to her left chest.
> Her genitals were also injured in a manner consistent with forced penetration contemporaneous with her death. During the investigation, the defendant was questioned because of his close relationship with a co-defendant in the case[,] Dani[a]l Williams.
> The defendant was advised of his legal rights and agreed to give a statement. He admitted to raping and stabbing Michelle Bos[ko] with Dani[a]l Williams and at least -- admitted that at least five others ha[d] participated in the attack after they had all forced their way into her apartment.

(JA at 580.)

5

A. **DNA Tests that Reflect that Omar Ballard's and Only Omar Ballard's DNA Was Recovered from the Victim's Person and the Crime Scene**

. . . .

In these federal habeas proceedings, Williams has submitted the December 21, 2005, Affidavit of Todd W. Bille,[5] the Director of Special Projects at the Bode Technology Group. (Am. § 2254 Pet. Index of Documents Ex. 23, at 1.) After reviewing a substantial amount of the record material regarding the rape and murder of Michelle Bosko, Bille swears that the evidence "suggest[s] that there was only one perpetrator of the crime, Omar Ballard . . . ." (*Id.* at 4.) Bille further swears that "the absence of any DNA connecting Danial Williams, Joseph Dick, Derek Tice or Eric Wilson to the crime scene makes it overwhelmingly likely that these four men did not participate in the rape and murder of Ms. Bosko." (*Id.*)

B. **Expert Analysis of the Autopsy of Michelle Bosko**

At Derek Tice's second trial in January of 2003, Dr. Kinnison testified for the prosecution. This Court previously observed that "significant questions [existed] as to how the medical evidence squared with the prosecution's theory that seven or eight men had taken turns stabbing Michelle." *Tice v. Johnson*, No. 3:08CV69, 2009 WL 2947380, at *19 (E.D. Va. Sept. 14, 2009) (footnote omitted). The Court then noted:

> Dr. Kinnison acknowledged that the three fatal wounds to the chest cavity were closely grouped, entered in the same general direction and were "virtually identical" in depth. (Jan. 28, 2003 Tr. 36.) Dr. Kinnison further acknowledged that "the strangulation and the stab wounds could have been caused by one individual." (Jan. 28, 2003 Tr. 39.) Throughout her testimony, Dr. Kinnison was reluctant to offer an opinion as to whether the medical evidence was more consistent with an attack by a single individual rather than by multiple individuals. Nevertheless, she acknowledged that, on July 9, 1997, when she conducted Michelle's autopsy, consistent with the then prevailing police theory, her impression was that the crime was committed by a single individual.

*Id.*

Additionally, Williams has presented the November 8, 2005 declaration of Dr. Werner U. Spitz, a highly respected, board certified forensic pathologist. (Resp. Mot. Dismiss Ex. 9, ECF No. 21–9.) Dr. Spitz concluded:

---

[5] Bille has "qualified as an expert in state and federal courts on DNA and serology analysis more than seventy times." (Am. § 2254 Pet. Index of Documents Ex. 23, at 1.)

> After evaluating all of the evidence, it is my opinion that the injuries on Ms. Bosko's neck, left side of her chest, and genital injuries are all consistent with a single offender and inconsistent with multiple offenders. From a forensic pathology perspective, the entire record in this matter is wholly inconsistent with a conclusion that multiple offenders raped and murdered Ms. Bosko. It is my opinion that the entirety of the injuries and the circumstances at the scene indicate to a reasonable degree of certainty that a single assailant raped and murdered Michelle Moore Bosko.

(*Id.* at 7.)

### C. Larry E. McCann's Crime Scene Analysis and Reconstruction Report of the Sexual Assault and Murder of Michelle Moore-Bosko[6]

In his November 3, 2005 report, McCann offers detailed and compelling support for his conclusion that "Ballard sexually assaulted and murdered the victim by himself" and that "Williams, Dick, Wilson, and Tice had nothing to do with this crime." (JA at 3718.)

### D. Alibi Evidence for Richard Pauley and John Danser

During his guilty plea, Williams stated that he raped and murdered Michelle with Pauley and Danser. During Derek Tice's second trial, the defense presented convincing testimonial and documentary evidence that neither Pauley nor Danser was present on the night of the crimes. (JA at 3074–3104, 3110–35, 3640–54, 4319, 4589–90, 4593–98.)[7]

### E. Williams's Recantation of the Stipulation of Facts from His Guilty Plea and Other Evidence that Corroborates Williams's Assertion of Innocence

In his affidavit, dated January 27, 2010, Williams swears that he told his attorneys Danny Shipley and Robert Frank, that "I did not have anything to do with Michelle's death and that I was home in bed with Nicole when the police said Michelle was murdered." (Am. § 2254 Pet. Index of Documents Ex. 2 ¶ 23.) Thereafter, Williams told his attorneys that "I did not want to plead guilty because I did not kill Michelle." (*Id.* ¶ 28.) Williams further represents, after Joseph Dick and then Eric Wilson were charged, Danny Shipley came to see him and asked

---

[6] (JA at 3672–3631.)

[7] Dick repeatedly testified that Danser and Pauley had participated in the rape and murder of Bosko. (JA at 610, 613, 615.)

7

him why he had not told Shipley about Dick's and Wilson's involvement. (*Id.* ¶¶ 30, 33.) On each occasion, Williams stated something to the effect of, "'Mr. Shipley, how could I tell you that someone else was involved when I wasn't there.'" (*Id.* ¶ 30; *see* ¶ 33.) Williams insists that his attorneys "pushed me really hard to take the plea and put enormous pressure on me, and I finally gave in and agreed to plead guilty to a crime I did not commit." (*Id.* ¶ 34.) Williams continues, "I am innocent and did not want to plead guilty, I felt I had no choice because my alibi witness had died and my lawyers were not prepared to fight the charges . . . I only pled guilty to avoid the death penalty." (*Id.* ¶ 37.)[8]

In his December 3, 2009 affidavit, Danny Shipley largely confirms Williams's account of their interactions. (*See* Am. § 2254 Pet. Index of Documents Ex. 16.) Shipley states,

> During the entire time that I represented him, Danial Williams always maintained that he was innocent of the charges against him and denied that he was involved in any way in the rape and murder of Michelle Bosko. At no time during my representation of Danial Williams did he ever say that he had any knowledge about this crime nor did ever say that he had information about any other person's involvement in this crime.

(*Id.* ¶ 4.)

> Ms. Williams appeared very ill to me when I met her. Either she or Danial Williams told me that she suffered from ovarian cancer. I also knew early on in my representation of Danial Williams, before Nicole Williams died, that she corroborated Danial Williams' claim that he was home in bed with her on the night that Michelle Bosko died. Neither I nor my co-counsel, Robert Frank, ever took steps to preserve Nicole Williams' testimony corroborating her husband's alibi, either by taking her deposition, having her sign an affidavit, or preserving testimony in some other way; [w]e just never considered doing so. We had no strategic reason for not preserving Nicole Williams' testimony, and it would have made sense to do so given her condition.
> After receiving the initial discovery from the Commonwealth in Danial Williams' case, I understood that the evidence against Danial Williams consisted of his confession and reports from friends or relatives of Michelle Bosko that Danial Williams seemed attracted to her. At this point, I believed Danial Williams was probably guilty of this crime. Neither I nor my co-counsel, Robert Frank, ever took steps to investigate the Commonwealth's evidence against Danial Williams or to

---

[8] Nicole Williams had confirmed to the police that Danial Williams was in bed with her on the night of Michelle's murder. (JA at 435.)

8

> investigate evidence that corroborated his statements to us that he did not commit the crime. We did not interview any witnesses nor did we retain an investigator to interview witnesses, visit the crime scene, or otherwise investigate the facts of Danial Williams' case. We did not have a strategic reason for not investigating Danial Williams' case.

(*Id.* ¶¶ 12–13 (paragraph number omitted).)

Additionally, Shipley confirms that, after Joe Dick and Eric Wilson confessed to their involvement in the crimes against Michelle Bosko, Shipley asked Williams why he had not provided Shipley with information about Dick and Wilson. (*Id.* ¶¶ 20, 22.) With respect to Dick, Williams responded, "'Mr. Shipley, how could I tell you his name, I wasn't there?'" (*Id.* ¶ 20.) With respect to Wilson, Williams responded, "'Mr. Shipley, how could I tell you about Wilson? I wasn't there.'" (*Id.* ¶ 22.)

Furthermore, Shipley acknowledges,

> We put a lot of pressure on Danial Williams to accept the Commonwealth's plea offer. I told Danial Williams that juries in Virginia were unlikely to believe that a person would confess to a crime unless he was guilty, and that Danial Williams was likely to be convicted at trial simply on his confession alone. . . . I also told Danial Williams that if he was convicted, he would very likely be sentenced to death. I told Danial Williams that Virginia is very efficient about executing inmates sentenced to death . . . . I told Danial Williams that I did not believe that we could persuade twelve jurors that he was not guilty and that the best we could hope for was to get a hung jury, in which case the Commonwealth would likely try him again. In sum, I described to Danial Williams, in the worst possible way, his prospects for prevailing at trial.

(*Id.* ¶ 25.)

### F. Joe Dick's Recantation of His Involvement in the Rape and Murder of Michelle Bosko and Evidence that Tends to Corroborate that Recantation

In a declaration executed on July 2, 2010, Dick swears that he "had no involvement in the rape and murder of Ms. Moore-Bosko. . . . In addition, any statements I made implicating Danial Williams, Derek Tice, or Eric Wilson in the Ms. Moore-Bosko's rape and murder are completely false." Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, Declaration of Joseph Jesse Dick, Jr. ¶ 41, *Dick v. Muse*, 3:10CV505, ECF No. 1–3 (E.D. Va. filed July 23, 2010). The Court acknowledges that, given the different statements that Dick has provided over the years about the crimes against Michelle, standing alone, his current

recantation is not reliable. *See Tice v. Johnson,* No. 3:08CV69, 2009 WL 2947380, at *21 (E.D. Va. Sept. 14, 2009) ("Confronted with the history of the meandering development of Dick's account of the crime and Dick's expressed willingness to tell the police anything they wanted [to] hear, a juror would have significant questions about the veracity of Dick's testimony.") Nevertheless, Dick's recantation is corroborated by Senior Chief Ziegler's testimony that, on the night of Michelle's murder, Dick was on duty on board the ship *Saipan* (JA at 3521–35), and the absence of any indication that, in their initial questioning by police, either Danial or Nicole Williams indicated Dick was present in their apartment on the night of the murder.

> G. **Omar Ballard's Initial Statements to the Police Indicating that He Committed the Crimes Alone and His Most Recent Statements Indicating that He Committed the Crimes Alone**
>
> . . . .
>
> In September of 2006, during the course of an evidentiary hearing for Derek Tice's state habeas proceeding, Ballard testified that he alone raped and murdered Michelle Bosko. (JA at 3474–75.)

*Williams,* 2014 WL 2921932, at *7–10 (footnote numbers altered) (alterations in original except for the addition of footnote number 7) (first and sixth omissions added).

Considered collectively, at this juncture, the Court concludes that Dick has supported his claim of innocence with sufficient evidence of the requisite reliability to proceed to the second step of the actual innocence inquiry.

### IV. Evaluation of All of the Evidence

Under the next step the Court evaluates "'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell,* 547 U.S. 518, 538 (2006) (quoting *Schlup v. Delo,* 513 U.S. 298, 327–28 (1995)). In this regard, the Court directed the parties to prepare a Joint Appendix necessary for resolution of Respondent's procedural defenses and Dick's assertion of actual innocence as a basis for overcoming such defenses. The Court has

reviewed the Joint Appendix, and the additional audio visual exhibits included with the Joint Appendix. As explained below, the Court concludes an evidentiary hearing is warranted.

Judge Williams provided the following summary of that evidence against Derek Tice which generally applies to Dick:

> There was no physical evidence linking [Dick] to the crimes or suggesting that [Dick] acted in concert with the individual[ ] who had committed the crimes. Indeed, the physical evidence tended to refute the theory that the rape and murder had been committed by multiple individuals. Although the prosecution alleged that eight men had crowded into the bedroom to rape Michelle, and then took turns stabbing her, there was remarkably little sign of such violent activity by so many men in such a confined space. Furthermore, the wounds to Michelle did not indicate that she had been the victim of serial stabbing by seven or eight different individuals. Additionally, while multiple DNA deposits were found at the crime scene, they were traced only to one individual, Omar Ballard.

*Tice v. Johnson*, No. 3:08CV69, 2009 WL 2947380, at *22 (E.D. Va. Sept. 14, 2009), *aff'd*, 647 F.3d 87 (4th Cir. 2011).[9]

Of course, Dick's longstanding and repeated prior admissions to his participation in the crimes against Michelle remain a substantial hurdle to demonstrating that "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28).[10] Additionally, Dick's bizarre letter to Nicole Williams, admitting to his involvement with Danial

---

[9] Upon reviewing evidence similar to that presented here, Judge Wynn, concluded that Eric Wilson "is almost certainly innocent" of the rape of Michelle Bosko. *Wilson v. Flaherty*, 689 F.3d 332, 341 (4th Cir. 2012) (Wynn, J., dissenting).

[10] This Court has observed that Dick's testimony about his participation in the rape and murder of Michelle "was hardly compelling. . . . 'in light of the variety of accounts Dick had provided and the lack of any significant corroboration of his testimony . . . .'" *Williams v. Muse*, No. 3:09CV769, 2014 WL 2921932, at *14 (E.D. Va. June 27, 2014) (quoting *Tice*, 2009 WL 2947380, at *14).

11

Williams in the crimes against Michelle,[11] support the prosecution's case that Williams and Dick raped and murdered Michelle.

Nevertheless, all the witnesses who directly implicated Dick in the rape and murder of Michelle Bosko have now recanted or retracted those accusations.[12] If credited, these recantations, in conjunction with the other evidence recited above, could establish Dick's assertion of his actual innocence. Under similar circumstances, the United States Court of Appeals for the Fourth Circuit has indicated an evidentiary hearing may be appropriate. *See Teleguz v. Pearson*, 689 F.3d 322, 331–32 (4th Cir. 2012) (remanding to the district court for an assessment on conducting an evidentiary hearing where two of the prosecution's three critical witnesses recanted their trial testimony); *Teleguz v. Pearson*, No. 7:10CV00254, 2012 WL

---

[11] For example, in one letter, Dick tells Nicole the story he wants her to repeat about his, Williams's, and Wilson's roles in the rape and murder of Michelle. (JA at 192.) Dick then states to Nicole:

> Nicole, you know that I love you and I know that you love me. I'm going to tell you something and I'm being straight up with you. If my DNA is found to be positive all that happened was Michelle was forced by knife point to give me a blowjob. I don't want you to get all pissed off at me for this but that is what happen [sic].

(*Id.*)

[12] Dick's recantation alone would not persuade a reasonable juror to doubt his guilt. He states, in pertinent part:

> I had no involvement in the rape and murder of Ms. Moore-Bosko. Any statements I made to the contrary are completely untrue. In addition, any statements I made implicating Danial Williams, Derek Tice, or Eric Wilson in Ms. Moore-Bosko's rape and murder are completely false. At the time that I made these statements, I was under a great deal of pressure. I feared that I would lose my deal with the Commonwealth if I did not cooperate, and at times told myself that I must have been involved. I have since come to know that I had no involvement in this horrible crime.

(§ 2254 Pet. Ex. 3 ¶ 41, ECF No. 1–3.)

12

6151984, at *3 (W.D. Va. Dec. 11, 2012) (concluding that "[l]ive testimony, subject to cross examination and questions from the court, is in my opinion necessary to determine the accuracy and reliability of the claim of innocence"). Furthermore, as the merits of Dick's assertion of innocence were not resolved in his state habeas proceeding, *see Townsend v. Sain*, 372 U.S. 293, 313 (1963), this Court will conduct an evidentiary hearing on Dick's gateway claim of actual innocence.

The Court will issue a separate scheduling and briefing order for conducting the evidentiary hearing.

An appropriate Order shall issue.

Date: 9/29/14
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge